COMMISSION ON HUMAN RIGHTS AND OPPORTU-
NITIES *v.* TRUELOVE AND MACLEAN, INC., ET AL.
(15375)
(15376)

Peters, C. J., and Callahan, Berdon, Norcott and Katz, Js.

Argued April 24—officially released July 30, 1996

*Charles Krich*, assistant commission counsel, with whom was *Philip A. Murphy, Jr.*, commission counsel, for the appellant in Docket No. 15375 (plaintiff).

*Eddi Z. Zyko*, for the appellant in Docket No. 15376 (Kristine A. Jennings).

*Donald A. Gray, Jr.*, for the appellee in both cases (named defendant).

PETERS, C. J. This appeal principally concerns the applicability of the remedies provided by various general antidiscrimination statutes in the context of discriminatory employment practices. The claimant, Kristine A. Jennings, filed with the commission on human rights and opportunities (commission) a complaint alleging that her former employer, the defendant, Truelove and Maclean, Inc.,[1] had discriminated against her because of her pregnancy. After a public hearing, a commission hearing officer determined that the defendant had engaged in discriminatory employment practices, and awarded the claimant disability insurance benefits and damages for emotional distress. The trial court dismissed an appeal brought by the commission on behalf of the claimant, in which she sought additional relief, and granted the motion of the defendant to vacate the award of damages for emotional distress. The claimant and the commission appealed from the judgment of the trial court to the Appellate Court,

---

[1] Robert J. Haggerty, the commission's hearing officer, who was also named as a defendant, is not involved in this appeal. References to the defendant are to Truelove and Maclean, Inc.

and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The following undisputed facts are relevant to this appeal. In March, 1981, the claimant began her full-time employment with the defendant. In November, 1984, due to fatigue and back strain caused by her pregnancy, the claimant considered herself incapable of effectively performing the duties and responsibilities associated with her employment. Accordingly, she spoke with the defendant's personnel manager to request a leave of absence. The personnel manager informed the claimant that the defendant had no policy that allowed for pregnancy disability leave and that the defendant would not allow such a leave of absence.[2] The defendant's treasurer similarly informed the claimant that the defendant could not provide a leave of absence under the circumstances. When the claimant asked whether she could return to work for the defendant after the birth of her child, the personnel manager informed her that she would have to reapply for a position and that she would receive consideration if a position were available. Although the defendant invited the claimant to reapply, it did not guarantee her reemployment. Nonetheless, the defendant maintained that it would have favorably considered the claimant for any vacant position if she had reapplied because, as the defendant's personnel manager testified, she had been a good employee.

On December 14, 1984, the claimant terminated her employment with the defendant because of the denial of her request for a leave of absence and because of her physical inability to perform her duties effectively

---

[2] Although the defendant maintained a disability insurance policy that provided for maternity and pregnancy disability benefits, no representative of the defendant explained to the claimant whether such benefits were available to her.

due to her pregnancy. After the birth of her child in January, 1985, the claimant never applied to the defendant for reinstatement to her former position or for employment in any other position. Approximately six months after the birth of her child, the claimant resumed employment, on a part-time basis, at an answering service. She subsequently terminated her employment with the answering service and took another part-time position with a bank.

In the complaint that the claimant filed with the commission, she claimed that the defendant had discriminated against her because of her pregnancy in a number of respects. The claimant alleged that, by denying her a leave of absence, the defendant had constructively terminated her employment and that this conduct had violated General Statutes §§ 46a-58 (a) and 46a-60 (a) (1) and (a) (7) (A) through (D).[3]

---

[3] General Statutes § 46a-58 provides in relevant part: "Deprivation of rights. Desecration of property. Cross burning. Penalty. (a) It shall be a discriminatory practice in violation of this section for any person to subject, or cause to be subjected, any other person to the deprivation of any rights, privileges or immunities, secured or protected by the constitution or laws of this state or of the United States, on account of religion, national origin, alienage, color, race, sex, blindness or physical disability. . . ."

General Statutes § 46a-60 provides in relevant part: "Discriminatory employment practices prohibited. (a) It shall be a discriminatory practice in violation of this section:

"(1) For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disorder, mental retardation, learning disability or physical disability, including, but not limited to, blindness . . . .

"(7) For an employer, by himself or his agent: (A) To terminate a woman's employment because of her pregnancy; (B) to refuse to grant to that employee a reasonable leave of absence for disability resulting from her pregnancy; (C) to deny to that employee, who is disabled as a result of pregnancy, any compensation to which she is entitled as a result of the accumulation of disability or leave benefits accrued pursuant to plans maintained by the employer; (D) to fail or refuse to reinstate the employee

After compliance with the required procedural steps, including a public hearing, the commission's hearing officer concluded that the defendant had discriminated against the claimant because of her pregnancy by refusing her a maternity leave of absence, in violation of § 46a-60 (a) (7) (A), (B) and (C). The hearing officer found, however, that "after the termination and when [the claimant] was able to return to work, she never reapplied for her job, although she had been told she could reapply, but without a guarantee of rehiring. This hearing officer has reread [the claimant's] testimony on this point several times, but does not find a satisfactory explanation for her not reapplying. . . . One can only wonder why she did not reapply. The worst that could have happened was that she did not get a job with the [defendant]. As is she had no job with the [defendant] so she would have lost nothing if not rehired. This all becomes very speculative since she did not reapply for work." In light of these findings that any further award would be speculative, the hearing officer declined to award the claimant reinstatement and back pay pursuant to General Statutes § 46a-86 (b).[4] The hearing officer

to her original job or to an equivalent position with equivalent pay and accumulated seniority, retirement, fringe benefits and other service credits upon her signifying her intent to return unless, in the case of a private employer, the employer's circumstances have so changed as to make it impossible or unreasonable to do so . . . ."

[4] General Statutes § 46a-86 provides in relevant part: "Complaint: Determination; orders; dismissal. (a) If, upon all the evidence presented at the hearing conducted pursuant to section 46a-84, the presiding officer finds that a respondent has engaged in any discriminatory practice, the presiding officer shall state his findings of fact and shall issue and file with the commission and cause to be served on the respondent an order requiring the respondent to cease and desist from the discriminatory practice and further requiring the respondent to take such affirmative action as in the judgment of the presiding officer will effectuate the purpose of this chapter.

"(b) In addition to any other action taken hereunder, upon a finding of a discriminatory employment practice, the presiding officer may order the hiring or reinstatement of employees, with or without back pay, or restoration to membership in any respondent labor organization, provided, liability for back pay shall not accrue from a date more than two years prior to the

awarded the claimant only $1815 in disability insurance benefits and $5000 in damages for emotional distress.

Pursuant to General Statutes §§ 4-183 and 46a-94a,[5] the commission, on behalf of the claimant, appealed from the decision of the hearing officer to the Superior Court. The commission claimed, inter alia, that the hearing officer improperly had failed to award the claimant reinstatement and back pay pursuant to § 46a-86 (b) and had failed to determine that the defendant had violated § 46a-60 (a) (7) (D). The trial court granted the claimant's motion to be joined as a plaintiff in the appeal. The defendant subsequently moved to vacate the hearing officer's award of damages for emotional distress and disability insurance benefits.[6]

filing or issuance of the complaint and, provided further, interim earnings, including unemployment compensation and welfare assistance or amounts which could have been earned with reasonable diligence on the part of the person to whom back pay is awarded shall be deducted from the amount of back pay to which such person is otherwise entitled. The amount of any such deduction for interim unemployment compensation or welfare assistance shall be paid by the respondent to the commission which shall transfer such amount to the appropriate state or local agency.

"(c) In addition to any other action taken hereunder, upon a finding of a discriminatory practice prohibited by section 46a-58, 46a-59, 46a-64, 46a-64c, 46a-81b, 46a-81d or 46a-81e, the presiding officer shall determine the damage suffered by the complainant, which damage shall include, but not be limited to, the expense incurred by the complainant for obtaining alternate housing or space, storage of goods and effects, moving costs and other costs actually incurred by him as a result of such discriminatory practice and shall allow reasonable attorney's fees and costs. . . ."

[5] General Statutes § 4-183 provides in relevant part: "Appeal to superior court. (a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section. . . ."

General Statutes § 46a-94a provides in relevant part: "Appeal to superior court from order of presiding officer. (a) The Commission on Human Rights and Opportunities, any respondent or any complainant aggrieved by a final order of a presiding officer . . . may appeal therefrom in accordance with section 4-183, except venue for such appeal shall be in the judicial district in which the discriminatory practice is alleged to have occurred or in the judicial district in which such person resides or transacts business. . . ."

[6] In response to the defendant's motion, the trial court modified the hearing officer's award by vacating the award of damages for emotional distress in

The trial court dismissed the commission's appeal. With respect to the commission's claim that § 46a-86 (b) required the hearing officer to award the claimant reinstatement and back pay, the court concluded that the denial of such remedies was proper because the statute made such relief discretionary rather than mandatory. With respect to the defendant's alleged violations of § 46a-60 (a) (7) (D), the court concluded that such a claim was foreclosed by the hearing officer's findings of fact regarding the claimant's unexplained failure to reapply for her position with the defendant, findings of fact for which there was substantial evidence in the administrative record. Although the trial court vacated the hearing officer's award of damages for emotional distress; see footnote 6; the court sustained the hearing officer's award of disability insurance benefits. The court declined to consider the commission's claim that damages for emotional distress could be awarded pursuant to § 46a-58 (a) because it determined that the claim had not been raised in the commission's appeal petition.

The commission and the claimant have both appealed from the judgment of the trial court. They claim that the trial court improperly: (1) vacated the hearing officer's award of damages for emotional distress; (2) upheld the hearing officer's decision not to award the claimant reinstatement and back pay; (3) upheld the hearing officer's determination that the defendant had not violated § 46a-60 (a) (7) (D); and (4) considered evidence

---

light of this court's decisions in *Fenn Mfg. Co.* v. *Commission on Human Rights & Opportunities*, 232 Conn. 117, 652 A.2d 1011 (1995), and *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 653 A.2d 782 (1995). These decisions postdated the conclusion of the administrative proceedings in this case.

Although the defendant appealed from the decision of the hearing officer on its merits, the trial court dismissed that appeal as untimely.

outside the administrative record in deciding the appeal.[7] We are not persuaded by any of these claims.

I

The commission contends that the trial court improperly concluded that the claimant was not entitled to an award of damages for emotional distress. Specifically, the commission argues that our decision in *Fenn Mfg. Co.* v. *Commission on Human Rights & Opportunities*, 232 Conn. 117, 652 A.2d 1011 (1995), in which we considered and denied such relief for violations of § 46a-60 (a) (7), does not foreclose such relief for violations of § 46a-58 (a).[8] The commission's argument is that § 46a-58 (a)[9] encompasses claims of discriminatory employment practices and that violations of § 46a-58 (a) entitle a claimant to damages for emotional distress pursuant to § 46a-86 (c).[10] We disagree.[11]

---

[7] The commission raises the first claim, and the claimant raises the remaining three claims.

[8] In *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 116, 653 A.2d 782 (1995), we expressly left undecided whether a violation of employment laws is also a violation of § 46a-58 (a).

[9] See footnote 3.

[10] See footnote 4.

[11] The commission also contends that the trial court improperly refused to consider whether the claimant was entitled to interest on the award she received. We disagree. The trial court concluded that the issue of an award of interest was so inadequately briefed by the commission that the issue had been abandoned. Our review of the commission's brief to the trial court discloses that it offered no meaningful argument or accompanying analysis as to the issue of an award of interest. "Where an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived." *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 115, 653 A.2d 782 (1995). Although the commission provided a relatively more complete discussion of the issue in its reply brief, discussion of an issue in a reply brief does not cure the inadequacy of the original brief. Cf. *Commissioner* v. *Youth Challenge of Greater Hartford, Inc.*, 219 Conn. 657, 659 n.2, 594 A.2d 958 (1991) ("[a]lthough the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, that function does not include raising an entirely new claim of error" [internal quotation marks omitted]). We thus conclude that the trial court properly declined to address the issue of an award of interest.

A

Initially, we agree with the commission that the trial court should have addressed the merits of the commission's claim of an award of damages for emotional distress premised on § 46a-58 (a). The trial court declined to do so on the ground that the commission had failed to raise the claim in its administrative appeal. We are persuaded, however, that the claim was properly before the trial court. Although the commission's petition to the Superior Court failed specifically to invoke the applicability of § 46a-58 (a), the commission did raise the claim in its appeal to the trial court. The commission addressed the claim both in its original brief and in its reply brief. The defendant never contested the propriety of the commission's initial raising of the claim before the trial court and has never contended that it had been prejudiced in any way. To the contrary, the defendant argued the merits of the commission's claim in the trial court, addressing the issue in its brief, in its rebuttal brief and at oral argument. Under these circumstances, we are persuaded that the trial court should have addressed the commission's claim. Cf. *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank,* 230 Conn. 486, 496–97, 646 A.2d 1289 (1994); *Tedesco* v. *Stamford,* 215 Conn. 450, 457, 576 A.2d 1273 (1990), on appeal after remand, 222 Conn. 233, 610 A.2d 574 (1992).

Although we could remand this case to the trial court for consideration of the commission's claim on its merits, we have decided to address the claim ourselves. The claim involves a question of law that requires no further factual foundation, namely, whether § 46a-58 (a) applies to discriminatory employment practices, and the parties have fully briefed the claim before this court. We agree, therefore, with the commission that addressing the merits of its claim will serve the interests of judicial economy. See *Matarazzo* v. *Rowe,* 225 Conn. 314, 324, 623 A.2d 470 (1993); *Rose* v. *Freedom of Infor-*

*mation Commission,* 221 Conn. 217, 231–32, 602 A.2d 1019 (1992).

B

With respect to the merits of the commission's claim, we are persuaded that § 46a-58 (a) does not encompass claims of discriminatory employment practices that fall within the purview of § 46a-60.[12] "It is a well-settled principle of [statutory] construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling." (Internal quotation marks omitted.) *Gaynor* v. *Union Trust Co.,* 216 Conn. 458, 476, 582 A.2d 190 (1990); *Home Ins. Co.* v. *Aetna Life & Casualty Co.,* 235 Conn. 185, 199, 663 A.2d 1001 (1995). Application of this principle of statutory construction to the present case defeats the commission's claim.[13] Unlike § 46a-58 (a), which generally forbids "any person to subject, or cause to be subjected, any other person to the deprivation of any rights, privileges or immunities, secured or protected by the constitution or laws of this state or of the United States, on account of religion, national origin, alienage, color, race, sex, blindness or physical disability," § 46a-60 specifically prohibits discriminatory *employment* practices. Accordingly, the specific, narrowly tailored cause of action embodied in § 46a-60 supersedes the general cause of action embodied in § 46a-58 (a).

Our conclusion that § 46a-58 (a) does not apply to discriminatory employment practices encompassed by § 46a-60 finds support in § 46a-86,[14] which sets forth the relief that a claimant may receive for a violation of

---

[12] See footnote 3.

[13] According to our research, the legislative history of §§ 46a-58 and 46a-60 sheds no light on the issue of whether claims of discriminatory employment practices that fall within the scope of § 46a-60 may be brought under § 46a-58 (a).

[14] See footnote 4.

certain provisions of title 46a. "We assume that the legislature attempts to create a consistent body of law. . . . Assuredly, we are guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law . . . . Indeed, this tenet of statutory construction requiring us to read statutes together is particularly applicable when the statutes relate to the same subject matter. . . . Finally, [w]e presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions." (Citations omitted; internal quotation marks omitted.) *Paige* v. *Town Plan & Zoning Commission*, 235 Conn. 448, 455, 668 A.2d 340 (1995); *Derwin* v. *State Employees Retirement Commission*, 234 Conn. 411, 420, 661 A.2d 1025 (1995); *Daly* v. *DelPonte*, 225 Conn. 499, 510, 624 A.2d 876 (1993).

Subsection (b) of § 46a-86 sets forth the remedies available to a victim of a "discriminatory employment practice." Subsection (c) of § 46a-86, in contrast, sets forth separate remedies available to a victim of a "discriminatory practice prohibited by section 46a-58 . . . ." The presence of these two separate subsections, § 46a-86 (b) and (c), reflects "a clear intention by the legislature to restrict the scope of both subsections to only certain types of discrimination." *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 106, 653 A.2d 782 (1995). The fact that § 46a-86 provides separate remedies for discriminatory employment practices under § 46a-60 and for discriminatory practices under § 46a-58 (a) is strong evidence of the legislature's intent that § 46a-58 (a) does not govern employment claims encompassed by § 46a-60.

We thus conclude that § 46a-58 (a) provides no basis for claims of discriminatory employment practices that fall within the scope of § 46a-60. In this case, the hearing officer determined that the defendant had violated

§ 46a-60 (a) (7) (A), (B) and (C). That determination cannot be used as a basis for finding a violation of § 46a-58 (a). Accordingly, the commission's claim that an award of damages for emotional distress arising from discriminatory employment practices may be predicated upon a violation of that statute must likewise fail.[15]

## II

The claimant contends that the trial court improperly concluded that she was not entitled to an award of reinstatement and back pay. Specifically, the claimant argues that § 46a-86 (b)[16] mandates an award of reinstatement and back pay upon a hearing officer's finding that a defendant has engaged in discriminatory employment practices. We agree with the trial court that the granting of an award of reinstatement and back pay rests in the discretion of the hearing officer, and conclude that the hearing officer in this case did not abuse his discretion in refusing to grant such an award.

### A

Whether a hearing officer is required to award reinstatement and back pay upon a finding of discriminatory employment practices depends on a proper interpretation of § 46a-86 (b). We approach this issue in light of well established principles of statutory construction. "It is fundamental that statutory construction requires us to ascertain the intent of the legislature and to construe the statute in a manner that effectuates that intent. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history

---

[15] In light of our resolution of the commission's claim, we need not decide in this case whether damages for emotional distress may be awarded for a violation of § 46a-58 (a). See General Statutes § 46a-86 (c).

[16] See footnote 4.

and circumstances surrounding its enactment,[17] to the legislative policy it was designed to implement, and to its relationship to existing legislation. . . . In order to determine the meaning of a statute, we must consider the statute as a whole when reconciling its separate parts in order to render a reasonable overall interpretation." (Citations omitted; internal quotation marks omitted.) *Murchison* v. *Civil Service Commission*, 234 Conn. 35, 45, 660 A.2d 850 (1995); *Quinnipiac Council, Boy Scouts of America, Inc.* v. *Commission on Human Rights & Opportunities*, 204 Conn. 287, 294–95, 528 A.2d 352 (1987).

"As with any issue of statutory interpretation, our initial guide is the language of the statute itself." (Internal quotation marks omitted.) *Herbert S. Newman & Partners* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 756, 674 A.2d 1313 (1996); see *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, supra, 232 Conn. 98. Section 46a-86 (b) provides that a hearing officer, upon a finding of discriminatory employment practices, "*may* order the hiring or reinstatement of employees, with or without back pay . . . ." (Emphasis added.) We have consistently held that "may" is directory rather than mandatory. See, e.g., *Seals* v. *Hickey*, 186 Conn. 337, 345–47, 441 A.2d 604 (1982). The word "may," unless the context in which it is employed requires otherwise, ordinarily does not connote a command. Rather, the word generally imports permissive conduct and the conferral of discretion. See id., 345; *Ridgeway* v. *Ridgeway*, 180 Conn. 533, 540, 429 A.2d 801 (1980); see also *A. Dubreuil & Sons, Inc.* v. *Lisbon*, 215 Conn. 604, 611, 577 A.2d 709 (1990).

[17] Our review of the applicable legislative history fails to inform the issue of whether the legislature intended to mandate awards of reinstatement and back pay in § 46a-86 (b).

The conclusion that, in § 46a-86 (b), "may" has its ordinary directory meaning is supported by the fact that "shall," which is often interpreted as mandatory, is also used several times in the same sentence and elsewhere in § 46a-86 (b). "The use of the word 'shall' in conjunction with the word 'may' confirms that the legislature acted with complete awareness of their different meanings . . . and that it intended the terms to have different meanings." (Citation omitted; internal quotation marks omitted.) *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, 236 Conn. 681, 694, 674 A.2d 1300 (1996).

The interpretation of "may" in § 46a-86 (b) as directory rather than mandatory is, furthermore, consistent with the policy that the statute is designed to implement. Under our laws prohibiting discrimination in the workplace, a hearing officer must construct a remedy for discriminatory employment practices in order to render a decree that will, "so far as possible, eliminate the discriminatory effects of the past as well as bar like discrimination in the future." (Internal quotation marks omitted.) *State* v. *Commission on Human Rights & Opportunities*, 211 Conn. 464, 478, 559 A.2d 1120 (1989); see *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, supra, 232 Conn. 111; *Civil Service Commission* v. *Commission on Human Rights & Opportunities*, 195 Conn. 226, 230–31, 487 A.2d 201 (1985). This remedial goal is furthered by vesting in a hearing officer broad discretion to award reinstatement, back pay or other appropriate remedies specifically tailored to the particular discriminatory practices at issue.

Thus, guided by the plain language of the statute and by the purpose the statute was intended to further, we conclude that § 46a-86 (b) does not mandate that a hearing officer award reinstatement and back pay to a victim of discriminatory employment practices. Rather,

the statute vests discretion in a hearing officer to grant such relief under the proper circumstances.

## B

We agree with the trial court that the hearing officer's refusal to award the claimant reinstatement and back pay was not an abuse of discretion.[18] "[T]he factual and discretionary determinations of administrative agencies are to be given considerable weight by the courts . . . ." (Internal quotation marks omitted.) *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, supra, 232 Conn. 109. The administrative record indicates that the hearing officer contemplated, but ultimately rejected, awarding reinstatement and back pay to the claimant. The hearing officer found that the claimant had never sought to return to her full-time position or to apply for any other position with the defendant, although she had the opportunity to do so. The hearing officer also found that the claimant had sought only part-time employment following the birth of her child and that the defendant had not been shown, in the record, to have available part-time employment for anyone. Under these circumstances, we conclude that the hearing officer's decision not to award reinstatement and back pay pursuant to § 46a-86 (b) did not constitute an abuse of discretion.[19]

---

[18] The claimant contends that the trial court improperly shifted the burden of proof to her and the commission on the issue of whether the hearing officer should have granted an award of reinstatement and back pay. We disagree. The claimant offers no evidence to support her claim, and our review of the record discloses no impropriety on the part of the trial court in this respect. As the plaintiffs in the administrative appeal from the hearing officer's decision, the commission and the claimant had the burden of establishing that the hearing officer's refusal to award reinstatement and back pay was improper. See General Statutes § 4-183 (j). The trial court, acting in an appellate capacity, properly reviewed each of the claims raised by the commission and the claimant in light of this governing principle.

[19] The claimant contends that § 46a-86 (b) requires the hearing officer to order reimbursement to the department of labor for unemployment compensation benefits received by her for the period during which she was unem-

## III

The claimant also contends that the trial court improperly concurred in the hearing officer's determination that the defendant had not violated § 46a-60 (a) (7) (D). We agree with the trial court.

"Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . This 'substantial evidence rule' is embodied in General Statutes § 4-183 (j) (5) and (6). . . ." (Citations omitted; internal quotation marks omitted.) *Dufraine* v. *Commission on Human Rights & Opportunities*, 236 Conn. 250, 259–60, 673 A.2d 101 (1996); *Dolgner* v. *Alander*, 237 Conn. 272, 280–81, 676 A.2d 865 (1996).

---

ployed. Because any order of reimbursement pursuant to § 46a-86 (b) is premised on an award of back pay; see General Statutes § 46a-86 (b); and because the hearing officer's denial of back pay was not improper, he was not required to order reimbursement to the department of labor.

Under § 46a-60 (a) (7) (D), it is a discriminatory practice for an employer "to fail or refuse to reinstate [an] employee [who had been pregnant] to her original job or to an equivalent position with equivalent pay and accumulated seniority, retirement, fringe benefits and other service credits *upon her signifying her intent to return* unless, in the case of a private employer, the employer's circumstances have so changed as to make it impossible or unreasonable to do so . . . ." (Emphasis added.) Substantial evidence supports the hearing officer's finding that the claimant never adequately signified her intent to resume employment with the defendant, a necessary predicate for a violation of § 46a-60 (a) (7) (D). Although prior to the birth of her child the claimant had expressed to the defendant's personnel manager her desire to resume her employment with the defendant after her pregnancy, she never thereafter signified her intent to return. To the contrary, after the claimant left the defendant's employ, she never sought either reinstatement or reemployment with the defendant, but rather sought part-time employment elsewhere upon her return to the workforce.

Moreover, the facts found by the hearing officer, which the claimant and the commission have not challenged as unsupported by substantial evidence, do not indicate that it would have been futile for the claimant to have reapplied for a position with the defendant. The defendant offered the claimant the opportunity to reapply for her former position, and encouraged her to do so. The claimant, however, never availed herself of that opportunity. The hearing officer found that the claimant had not offered "a satisfactory explanation for her not reapplying."

Section 46a-60 (a) (7) (D) expressly provides, as a condition precedent to establishing a violation thereof, that a claimant must "[signify] her intent to return" to employment with the employer. Our review of the

administrative record reveals that substantial evidence supported the hearing officer's finding that this condition precedent had not been established in this case. Accordingly, we agree with the trial court that the hearing officer properly determined that the defendant had not violated § 46a-60 (a) (7) (D).

## IV

The claimant next contends that in reaching its decision the trial court improperly relied on evidence not contained in the administrative record. Although this claim is ambiguously stated, we will construe it as an allegation that the trial court considered evidence not contained in the administrative record regarding the claimant's employment history subsequent to the birth of her child. This claim is meritless. There is nothing in the trial court's memorandum of decision that indicates that the trial court, in reaching its decision, looked beyond the information contained in the administrative record. To the contrary, our review of the record reveals that the trial court relied solely on facts found by the hearing officer, which in turn had been based on the claimant's own testimony at the public hearing. This claim of impropriety has no evidentiary basis.

The judgment is affirmed.

In this opinion CALLAHAN, NORCOTT and KATZ, Js., concurred.

BERDON, J., dissenting. The court continues to read narrowly the legislative grant of jurisdiction to the commission on human rights and opportunities (CHRO). See *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 653 A.2d 782 (1995); *Fenn Mfg. Co.* v. *Commission on Human Rights & Opportunities*, 232 Conn. 117, 652 A.2d 1011

(1995).[1] Not only am I unable to agree with the result reached by the court today, but I cannot accept its reasoning or its implicit rejection of the public policy concerns underlying today's decision that the CHRO does not have jurisdiction to award compensatory damages in this case.

To begin, a review of the CHRO's statutory scheme must consider its beneficent purposes. By enacting the statutes under title 46a, Connecticut's human rights laws, the legislature set out not only to prevent impermissible discrimination, but also to compensate, as nearly as possible, the victims of discrimination. As part of title 46a, the Connecticut Fair Employment Practices Act (act); General Statutes § 46a-51 et seq.; was enacted to eliminate discriminatory practices from the workplace. As such, the act is composed of remedial statutes, which are to "be construed liberally to effectuate their beneficent purposes." *Civil Service Commission* v. *Trainor*, 39 Conn. Sup. 528, 532, 466 A.2d 1203 (1983); see also *Larsen Chelsey Realty Co.* v. *Larsen*, 232 Conn. 480, 492, 656 A.2d 1009 (1995) (remedial statutes are to "be liberally construed in favor of those whom the legislature intended to benefit"). Indeed, the court in this case has failed to abide by this canon of statutory construction.

"[T]he victim of a discriminatory practice is to be accorded his [or her] rightful place in the employment scheme, that is, he [or she] has a right to be restored to the position he [or she] would have attained absent the unlawful discrimination. . . . Where prohibited discrimination is involved, the hearing officer has not merely the power but the duty to render a decree which will, so far as possible, eliminate the discriminatory effects of the past as well as bar like discrimination in

---

[1] I was not a member of the panels of Supreme Court justices that decided these cases.

the future." (Citation omitted; internal quotation marks omitted.) *State* v. *Commission on Human Rights & Opportunities*, 211 Conn. 464, 478, 559 A.2d 1120 (1989).

"Read in its entirety, the [act] not only defines important rights designed to rid the workplace of discrimination, but also vests first-order administrative oversight and enforcement of these rights in the CHRO." *Sullivan* v. *Board of Police Commissioners*, 196 Conn. 208, 216, 491 A.2d 1096 (1985). "It is the CHRO that is charged with the primary responsibility of determining whether discriminatory practices have occurred and what the appropriate remedy for such discrimination must be." *Dept. of Health Services* v. *Commission on Human Rights & Opportunities*, 198 Conn. 479, 488, 503 A.2d 1151 (1986).

In this case, the CHRO awarded compensatory damages in the amount of $5000 for emotional distress suffered by the claimant, Kristine A. Jennings, as a result of the defendant Truelove and Maclean, Inc.'s discriminatory employment practices. Specifically, Jennings was found to have been constructively discharged because of her pregnancy.[2] The majority's reversal of the CHRO's award of compensatory damages, holding that the CHRO did not have jurisdiction to award such relief, is predicated on the assumption that General Statutes § 46a-58 (a) "does not encompass claims of discriminatory employment practices that fall within the purview of [General Statutes] § 46a-60."

This conclusion, however, ignores the plain language of § 46a-58 (a),[3] which provides in relevant part: "It shall be a discriminatory practice in violation of this section for any person to subject . . . any other person to the deprivation of any rights . . . *protected by the consti-*

---

[2] Discrimination on the basis of sex "includes but is not limited to discrimination related to pregnancy . . . ." General Statutes § 46a-51 (17).

[3] Jennings alleged a violation of § 46a-58 (a) in her complaint to the CHRO.

*tution or laws of this state* . . . on account of religion, national origin, alienage, color, race, sex, blindness or physical disability." (Emphasis added.) Section 46a-58 (a) prohibits, as an illegal discriminatory practice, the deprivation of any right provided by statute or the constitution due to one of the factors enumerated above. Consequently, § 46a-58 (a) requires, by its own terms, another provision, be it statutory or constitutional, before it becomes operative. In other words, § 46a-58 (a) is triggered by a violation of an individual's rights, as provided for in another statutory or constitutional provision, on the basis of one or more of the following factors: religion, national origin, alienage, color, race, sex, blindness or physical disability.

In this case, the statute that triggered the protection of § 46a-58 (a) was § 46a-60. Pursuant to § 46a-60,[4] individuals are guaranteed a workplace and terms, conditions and privileges of employment that are free of impermissible discrimination due to, inter alia, their sex. Because § 46a-60 prohibits employment discrimination on the basis of sex, and sex is one of the factors enumerated under § 46a-58 (a), the CHRO has jurisdiction to award remedies that are available under either statute. I note that there are some forms of discrimination that are prohibited under § 46a-60, such as discrimination due to age or marital status, that are not within the purview of § 46a-58 (a) and that, therefore, § 46a-58 would be inapplicable.

The majority asserts that General Statutes § 46a-86, which sets forth the remedies available to a victim of

---

[4] General Statutes § 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section: (1) For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disorder, mental retardation, learning disability or physical disability, including, but not limited to, blindness . . . ."

discrimination, supports its interpretation of § 46a-58. I disagree. By its own terms, § 46a-86 (b),[5] which provides the remedies for violations of § 46a-60, is not exclusive. Similarly, § 46a-86 (c),[6] which provides the remedies for a violation of § 46a-58, is not exclusive.

The majority also rests its opinion upon a partially quoted canon of statutory construction set forth in *Gaynor* v. *Union Trust Co.*, 216 Conn. 458, 476–77, 582 A.2d 190 (1990). The complete canon stated in *Gaynor* is as follows: "It is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling. . . . Where there are two provisions in a statute, one of which is general and designed to apply to cases generally, and the other is particular and relates to only one case or subject within the scope of a general provision, then the particular provision must prevail; and *if both cannot apply*, the particular provision will be treated as an exception to the general provision." (Citation omitted; emphasis added; internal quotation marks omitted.) Id. It is fundamental that "when two statutes relate to the same subject matter every effort should be made to find a reasonable field for the operation of both statutes . . . [and] where there is a reason-

---

[5] General Statutes § 46a-86 (b) expressly provides in relevant part: *"In addition to any other action taken hereunder,* upon a finding of a discriminatory employment practice, the presiding officer may order the hiring or reinstatement of employees, with or without back pay, or restoration to membership in any respondent labor organization . . . ." (Emphasis added.)

[6] General Statutes § 46a-86 (c) provides in relevant part: *"In addition to any other action taken hereunder,* upon a finding of a discriminatory practice prohibited by section 46a-58 . . . the presiding officer *shall determine the damage suffered by the complainant* . . . and shall allow reasonable attorney's fees." (Emphasis added.) Accordingly, an individual, such as Jennings, who is discriminated against in violation of § 46a-58 and who suffers emotional distress, may be awarded compensatory damages pursuant to § 46a-86 (c).

able field of operation for each statute [that] does not impinge on the domain of the other, it is the court's duty to give them concurrent effect." (Internal quotation marks omitted.) *Windham First Taxing District* v. *Windham*, 208 Conn. 543, 553, 546 A.2d 226 (1988). In other words, only if a specific statutory provision is inconsistent with a general provision will the specific provision be given exclusivity. Sections 46a-58 (a) and 46a-60, however, are not inconsistent and both can be applied harmoniously. In this case, the claimant has suffered an injury for which both provisions provide remedies that complement each other and that together provide comprehensive relief.

Moreover, the legislative history supports the CHRO's position that it has jurisdiction to award compensatory damages for emotional distress caused by discriminatory employment practices on the basis of sex. This history indicates that § 46a-58 (a) (formerly § 53-34) was intended to have broad application. Originally, the CHRO did not have jurisdiction to enforce § 46a-58 (a). 18 H.R. Proc., Pt. 10, 1975 Sess., pp. 4808–4810. In 1971, the General Assembly attempted to give the CHRO investigative and enforcement powers over § 46a-58 (a) complaints by passing Senate Bill No. 1772, but then Governor Thomas J. Meskill vetoed that attempt and stated that "[t]he subject matter of [§ 46a-58 (a)] is so broad and general as to provide imprecise direction for an executive commission. Such broad subject matter is more properly relegated to the courts who now have authority in this area." Conn. Senate Journal, Pt. 3, Spec. Sess., August 1971, p. 74. In 1973, a similar bill, House Bill No. 8400, was passed and was again vetoed by Governor Meskill.

In 1975, however, No. 75-462 of the 1975 Public Acts was adopted to allow the CHRO to investigate and enforce complaints raised under § 46a-58 (a). Representative Thomas C. Clark stated that the "[b]ill  .  .  .

would extend the powers of the Human Rights and Opportunities Commission to enforce [§ 46a-58 (a)] of the Connecticut General Statutes, which is the Civil Rights Statute of the State of Connecticut . . . which prohibits discrimination or deprivation of rights on account of alienage, color, race or sex. . . . [Presently] the Commission has a right to receive complaints . . . for [a] violation of [§ 46a-58 (a)], but it does not have the right to prosecute those [complaints] to completion under its own laws. This Bill will enable them to do so." 18 H.R. Proc., supra, pp. 4808–4809.

Finally, "it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement." (Internal quotation marks omitted.) *Starr* v. *Commissioner of Environmental Protection*, 226 Conn. 358, 372, 627 A.2d 1296 (1993). As Judge Maloney of the Superior Court noted in a 1994 memorandum of decision in which he addressed this issue: "The CHRO . . . cites an unbroken string of (its administrative) decisions going back *14 years* in which it has awarded damages for emotional distress in employment discrimination cases . . . ." (Emphasis added; internal quotation marks omitted.) *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV920299985 (January 31, 1994).

Therefore, I would hold that the CHRO has jurisdiction to award compensatory damages, pursuant to §§ 46a-58 (a) and 46a-86 (c), for emotional distress in order to compensate the claimant for her emotional injury.

Accordingly, I dissent.