[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The question in this case is whether the Commission on Human Rights and Opportunities ("CHRO") has authority to hear complaints of discrimination against students in the public schools. The court holds that it does have this authority and sustains this appeal. CT Page 16542
BACKGROUND
On December 19, 1997, Chillon Ballard, a senior at Cheshire High School, filed a complaint with the CHRO alleging racial discrimination. Ballard alleged that he and a friend were called a "nigger" by a white student and that a fight ensued. The school suspended Ballard and his friend for three days, while the school did not suspend the white student. Ballard claimed that the school handbook provided that all students involved in fights will be suspended. (Return of Record, ("ROR"), pp. 267-68.)
According to the complaint, the racial harassment continued on a daily basis upon Ballard's return to school. Ballard complained to the school principal but the principal told him that nothing further would be done. Ballard then withdrew from Cheshire High School. (ROR, p. 268.) He later graduated from Hamden High School. (Affidavit of Judith Diemand (Nov. 7, 2001), ¶ 3.)
Ballard's CHRO complaint alleged that the actions of the defendant Cheshire Board of Education ("the Board") violated General Statutes §§ 10-15c, 46a-58 (a), 46a-64 (a)(1), and 46a-75. (ROR, p. 267.) The Board moved to dismiss the complaint. On July 15, 1999, the presiding human rights referee granted the motion to dismiss as to §§ 10-15c,46a-58, and 46a-64, but denied the motion as to § 46a-75 "as neither party ha[d] either briefed or even mentioned its existence." (ROR, p. 160.) The Board then filed a second motion to dismiss based on General Statutes § 46a-75. On May 31, 2000, the referee granted the motion and dismissed the complaint. (ROR, pp. 2-3, 18.) CHRO has appealed to this court. Ballard has not appealed or joined CHRO's appeal.
DISCUSSION
 I
The Board initially asserts that this case is moot. The court holds that it is moot as to Ballard, but not as to the CHRO.
A case becomes moot when "due to intervening circumstances a controversy between the parties no longer exists." (Internal quotation marks omitted.) Board of Education v. State Board of Education,243 Conn. 772, 777, 709 A.2d 510 (1998). Since Ballard did not appeal the referee's decision dismissing the complaint or join CHRO's appeal, that decision is final as to him. Cf Commission on Human Rights Opportunities v. Truelove Maclean, Inc., 238 Conn. 337, 342, 680 A.2d 1261
(1996). He therefore can no longer obtain damages or any other relief against the Board as a result of his CHRO complaint.[1] He no longer CT Page 16543 has any live controversy with the Board. Ballard's case is moot.[2]
CHRO's case remains. Indeed, under state law, CHRO had authority to file this complaint on its own and has authority to appeal the referee's decision on its own. See General Statutes §§ 46a-82 (b),46a-94a (a).[3] In a series of recent cases, the Supreme Court and Appellate Court have held that CHRO has an "institutional interest in decisions that affect its decision-making ability." Williams v. Commission on HumanRights Opportunities, 257 Conn. 258, 265, 777 A.2d 645 (2001). Thus, the Supreme Court has held that CHRO may itself prosecute the issue of whether its limitations period for filing complaints implicates subject matter jurisdiction; id., 264-66; and the Appellate Court has held that the CHRO may appeal a referee's decision to open a default entered by the CHRO's executive director. Commission on Human Rights Opportunities v.Human Rights Referee, 66 Conn. App. 196, ___ A.2d ___ (2001).[4] In this case, CHRO has a similar institutional interest in whether it has jurisdiction over claims of discrimination against students in the public schools.
In addition to this institutional interest, CHRO may seek statutory remedies such as a cease and desist order or an affirmative action order against the Board in this case. See General Statutes § 46a-86 (a). CHRO thus has a live controversy with the Board concerning whether, in general, CHRO has jurisdiction over discrimination against students in the public schools and whether, in this case, CHRO is entitled to any statutory remedies. CHRO's case is therefore not moot.
 II
The Board next argues that CHRO should have filed its appeal within forty-five days of the July 15, 1999 decision on the first motion to dismiss rather than wait and file, as it did, within the forty-five day period following the May 31, 2000 decision on the second motion to dismiss. See General Statutes § 4-183 (c). The court rejects this argument.
The Board initially overlooks the fact that CHRO partially prevailed in the first motion to dismiss. Had the Board not filed a second motion to dismiss, the case would presumably have gone to the hearing stage to determine whether there was a violation of General Statutes § 46a-75, the statute that the referee did not initially rule out of the case. Because CHRO would have been able to conduct a hearing on the merits, which is generally the relief it seeks now, it is not at all clear that CHRO would have had the necessary aggrievement to file an appeal after the ruling on the first motion to dismiss. See New England RehabilitationCT Page 16544Hospital of Hartford, Inc. v. Commission on Hospitals and Health Care,226 Conn. 105, 120, 627 A.2d 1257 (1993).
Moreover, an appeal after the decision on the first motion to dismiss would have been interlocutory and premature. At the outset, it is not certain that CHRO has authority to appeal an interlocutory ruling because its own appeals statute provides that CHRO may appeal from a "final order" of a presiding officer. General Statutes § 46a-94a.[5] Even if CHRO did have authority to file an interlocutory appeal under §4-183 (b) of the Uniform Administrative Procedure Act, this provision allows interlocutory appeals only in "exceptional circumstances."Commission on Human Rights Opportunities v. Human Rights Referee, supra, 66 Conn. App. 200.[6] There were no exceptional circumstances here. CHRO had partially prevailed on the first motion to dismiss. Postponement of the appeal would not have harmed CHRO at the time, as it could still have proceeded under § 46a-75 and, if it lost on the merits, it could have raised the ruling on the first motion to dismiss as an issue on appeal from the final decision. As it turned out, the Board filed a second motion to dismiss, the referee granted it, and CHRO has brought one appeal challenging both rulings. That procedure was the proper one to follow.
 III
CHRO's jurisdiction extends, with exceptions not pertinent here, to any person "claiming to be aggrieved by an alleged discriminatory practice." General Statutes § 46a-82 (a). A "discriminatory practice" means a violation of numerous statutes, including three — General Statutes §§ 46a-58, 46a-64, and 46a-75 — that CHRO relies upon here. See General Statutes § 46a-51 (8).[7] Because CHRO contends that §46a-58 provides the strongest basis for jurisdiction over public school complaints, the court will begin its analysis there. This court has plenary review of this issue because the question of whether CHRO has jurisdiction over public schools under § 46a-58 is one of law not previously subject to judicial scrutiny. See MacDermid, Inc. v. Departmentof Environmental Protection, 257 Conn. 128, 136, 778 A.2d 7 (2001).
General Statutes § 46a-58 is entitled "Deprivation of Rights. Desecration of property. Cross burning. Penalty." Subsection (a) provides as follows:
 It shall be a discriminatory practice in violation of this section for any person to subject, or cause to be subjected, any other person to the deprivation of any rights, privileges or immunities, secured or protected by the constitution or laws of this state or of the CT Page 16545 United States, on account of religion, national origin, alienage, color, race, sex, blindness or physical disability.
The plain language of this provision extends to the deprivation of "any rights, privileges or immunities" secured by state or federal statutes or constitutional provisions. (Emphasis added.) This broad wording, at least when examined in isolation from other related provisions, unquestionably includes statutory or constitutional rights to education. Thus, it appears that § 46a-58 could serve to secure the right to equal opportunity to participate in public school programs, as provided in General Statutes § 10-15c,[8] or the state constitutional guarantee to "free public elementary and secondary schools in the state." Conn. Const., art. 8, § 1. This interpretation does not conflict with any other provision within CHRO's jurisdiction in Title 46a of the General Statutes. Cf. Commission on Human Rights Opportunities v. Truelove Maclean, Inc., supra, 238 Conn. 346-48 (§46a-58 (a) does not apply to employment discrimination claims that fall within General Statutes § 46a-60).
The Board now argues, however, that under General Statutes § 10-4b, local and state boards of education have exclusive jurisdiction over complaints of discrimination against public school students. Section 10-4b
is a comprehensive statute entitled "Complaint alleging failure or inability of board of education to implement educational interests of state. Investigation; inquiry; hearing. Remedial process. Regulations." The first sentence of the statute provides as follows:
 Any resident of a local or regional school district, or parent or guardian of a student enrolled in the public schools of such school district who has been unable to resolve a complaint with the board of education of such local or regional school district may file with the State Board of Education a complaint in writing, or the state board may initiate a complaint, alleging the failure or inability of the board of education of such local or regional school district to implement the educational interests of the state in accordance with section 10-4a.[9]
General Statutes § 10-4b (a). The remainder of the statute provides that the State Board of Education shall investigate the complaint and, if appropriate, require the local board to engage in a remedial process or to comply with other orders. If the local board fails to do so, the State Board may seek an order from the Superior Court compelling compliance by the local board.[10]
CT Page 16546
CHRO does not dispute that a complaint, such as the one filed here, of unequal treatment in the public schools could be filed with the local board of education and, if unsuccessful, with the State Board of Education pursuant to § 10-4b. The question in this case instead reduces to whether that remedy is exclusive or, alternatively, whether § 46a-58 is also available. The Board initially relies on the fact that the General Assembly enacted § 10-4b knowing that the predecessor of § 46a-58 already existed.[11] The Board then argues that, in enacting § 10-4b, the legislature created a remedy specifically tailored to public school discrimination complaints that would have been superfluous if § 46a-58 also applied to the public schools.
The court does not agree. In enacting § 10-4b, the legislature did not chose to amend § 46a-58 to exempt public school discrimination complaints and "we should not read into a remedial statute an unstated exception that would undermine the legislature's manifest intent. . . ."Commission on Human Rights Opportunities v. Sullivan Associates,250 Conn. 763, 781-82, 739 A.2d 238 (1999). Nor did the legislature provide in § 10-4b that boards of education have "exclusive" authority to address discrimination complaints, in contrast to what the legislature has done in other statutes. See, e.g., General Statutes § 16-243
("The Department of Public Utility Control shall have exclusive jurisdiction and direction over the method of construction or reconstruction in whole or in part of each system used for the transmission or distribution of electricity. . . ."); General Statutes § 22a-163n (a) ("Notwithstanding any other provision of the general statutes, the [Connecticut Siting] council shall have exclusive jurisdiction over the siting of facilities. . . ."); General Statutes § 29-349 (a) ("The Commissioner of Public Safety shall have exclusive jurisdiction in the preparation of and may enforce reasonable regulations for the safe and convenient storage, transportation and use of explosives and blasting agents. . . .").
Although there is plenty of authority that specific provisions prevail over more general ones; see, e.g., Commission on Human Rights Opportunities v. Truelove Maclean, Inc., supra, 238 Conn. 346; this principle does not necessarily control if both provisions can apply. SeeGifford v. Freedom of Information Commission, 227 Conn. 641, 652-653,631 A.2d 252 (1993). In the present case, there is ample room for the two statutes to coexist without the risk of one rendering the other superfluous. Section 10-4b appears to offer a complainant a local, informal remedy with the board of education. Section 46a-58, in contrast, requires compliance with various CHRO pleading and time requirements. See General Statutes § 46a-82. On the other hand, the CT Page 16547 CHRO process offers the complainant the possibility of obtaining damages, attorney's fees, and costs; see General Statutes § 46a-86
(c); whereas § 10-4b does not.[12]
The situation here is not different from others in which CHRO shares jurisdiction with other more specialized state agencies. The most common example is employment discrimination. The Commissioner of Labor has authority to enforce our state's prohibition on discrimination in compensation on account of sex. See General Statutes §§ 31-75, 31-76. CHRO has similar jurisdiction. See Board of Education v. Commission onHuman Rights Opportunities, 177 Conn. 75, 76, 411 A.2d 40 (1979). See also General Statutes § 46a-62 (providing that CHRO's employment discrimination statutes do not void or supersede General Statutes §31-75). Indeed, our statutes specifically provide that "[a]ll state agencies shall cooperate with the Commission on Human Rights and Opportunities in their enforcement and educational programs." General Statutes § 46a-77 (a). This mandated cooperation is an example of the fact that "legislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination." Alexander v. Gardner-Denver Co., 415 U.S. 36, 47
(1974).
It can be argued that the education of children is a specialized area and that boards of education may be better equipped to address questions of local educational policy and implementation than a centralized human rights agency. See Gupta v. New Britain General Hospital, 239 Conn. 574,590-91, 687 A.2d 111 (1996). This argument, however, is for the legislature to consider. Courts cannot rewrite statutes but can only interpret them as they stand. As the statutes stand now, § 46a-58
permits the CHRO to hear claims that a person was deprived of a right to an educational program on the basis of race and § 10-4b does not prohibit CHRO from doing so.[13]
CONCLUSION
The appeal is sustained, the referee's dismissal of the case is vacated, and the case is remanded for further proceedings consistent with this opinion.
Carl J. Schuman Judge, Superior Court