Coretha THOMAS, Plaintiff,

v.

SAINT FRANCIS HOSPITAL AND
MEDICAL CENTER,
Defendant.

No. 3:96 CV 465 (GLG).

United States District Court,
D. Connecticut.

Jan. 12, 1998.

James S. Brewer, West Hartford, CT, Dawn S. Greenlaw, Simsbury, CT, for Plaintiff.

Joseph A. Moniz, Regina A. Long, Elizabeth Ann Alquist, Robert J. O'Hara, Day, Berry & Howard, Hartford, CT, for Defendant.

## OPINION

GOETTEL, District Judge.

Pursuant to Federal Rule of Civil Procedure 56, defendant Saint Francis Hospital and Medical Center ("St.Francis"), moves for summary judgment. For the reasons discussed below, defendant's motion (**Document # 23**) is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff, Coretha Thomas, was hired by St. Francis on December 9, 1976 and worked as a radiology technician for over fifteen years. Plaintiff is a single, black mother and a member of the Pentecostal Church. Beginning in 1981, Thomas received training to conduct mammograms. As part of her duties, she worked in the Radiology Department, the Emergency Room, and the Breast Health Center. All of Thomas' supervisors are white. In the Radiology Department,

Thomas' direct supervisor was Nancy Gallic and her second-level supervisor was Milo Hoffman. Mona Branchini was the director of the Breast Health Center.

On October 26, 1993, St. Francis fired Thomas for allegedly violating hospital policies relating to patient care. Defendant claims that it warned, disciplined, suspended, and ultimately terminated Thomas because it had received numerous complaints that she was preaching to patients while conducting mammograms.

According to Thomas' employment record, Thomas was involved in at least four incidents of preaching to patients in 1993. On May 12, 1993, Thomas received a written warning that included complaints from several of Thomas' co-workers that Thomas had told patients that "Jesus saves" and they need to "repent their sins." The written warning, entered by Gallic, indicated that Thomas had received a previous verbal warning about preaching to patients. The report concluded that "[l]ong lunches, excessive personal phone calls and preaching to patients must stop immediately. If they continue, further disciplinary action including suspension may be taken."

The second incident was reported in Thomas' employment record on June 22, 1993 and involved a patient complaint which was reported to Branchini on the previous day. The patient—Susan Maciaga, who is also a nurse at the hospital—testified at a deposition that Thomas had made several comments to her after a mammogram, including the statement "God Bless You" and a statement involving everlasting life. Maciaga further testified that she was very upset after the incident because she thought, based on Thomas' comments, that Thomas had seen something negative on the mammogram. Due to this complaint, Thomas was suspended for one day without pay and was warned that further violations of hospital policy could result in termination.

The June 22 report also referred to a patient complaint of February 26, 1993 in which Thomas allegedly asked the patient if she believed in God and then told her that she was "healed" due to her belief. According to the report, Hoffman verbally reviewed this complaint with Thomas. On the report, however, Thomas noted that she did not remember speaking with Hoffman about the incident.

The final incident of preaching was reported in Thomas' employment record on October 26, 1993. In the report, Hoffman stated that he discussed with Thomas a formal complaint filed by a patient stating that Thomas had preached to her. Because the October 26 report was Thomas' third written warning for violating hospital policies, St. Francis terminated Thomas' employment.

In addition to plaintiff's preaching, defendant asserts that Thomas exhibited inappropriate behavior throughout 1993. On February 5, 1993, she was verbally warned about taking unauthorized extended lunch breaks and on April 9, 1993 she received a verbal warning about starting her shift at the scheduled time. On May 12, 1993, plaintiff received a written warning for taking extended lunch breaks and making excessive personal telephone calls while patients were waiting.

In response to these allegations, plaintiff claims that defendant used the alleged violations of hospital policies as a pretext by which to discriminate against her due to her race, religion, marital status, and gender. She argues that defendant fabricated the above-mentioned incidents in her employment record, and claims that each report was actually a complaint of supervisors who disapproved of her religious beliefs and family responsibilities. She further asserts that defendant's conduct caused her to be wrongfully denied the opportunity of seeking advancement within the hospital. She contends that her supervisor, Hoffman, demonstrated a racial and marital status animus towards her in his remarks and conduct. As examples, she cites one incident in which Hoffman allegedly asked how she, "a black, single mother," could go away on vacation. On another occasion, Hoffman allegedly asked how she, a "single mother," could afford to send her child to private school. Thus, she asserts that each time defendant claimed she violated hospital policy, it was engaging in discriminatory conduct.

## THE AMENDED COMPLAINT

On March 24, 1994, Thomas timely filed written charges of discrimination with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") and the federal Equal Employment Opportunity Commission ("EEOC"). On March 12, 1996, Thomas received a "Notice of Right to Sue" from the EEOC. Plaintiff commenced this action on March 18, 1996, as amended on May 20, 1996, claiming that defendant discriminated against her based on her religion, race, marital status, and gender in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e, *et seq.*, and Conn. Gen.Stat. §§ 46a–58(a) and 46a–60(a)(1). She also asserted several state-law claims for wrongful termination, defamation, and intentional and negligent infliction of emotional distress.

This Court has supplemental jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) because these claims and the Title VII claims derive from a common nucleus of operative facts. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *see King v. Crossland Sav. Bank,* 111 F.3d 251, 256 (2d Cir.1997) (upholding the district court's exercise of supplemental jurisdiction over plaintiffs' state-law claims because the court properly had original jurisdiction over plaintiffs' federal causes of action). Moreover, this is not a case in which plaintiff's state-law claims predominate to such a degree that this Court could exercise its discretion to decline jurisdiction over these claims. 28 U.S.C. § 1367(c)(2).

## DISCUSSION

Summary judgment is appropriate only if the court determines from the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits that there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress &*

Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). When ruling on a summary judgment motion, a court must construe the facts in a light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If there is no genuine issue of material fact, the moving party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party may obtain summary judgment by showing that little or no evidence may be found in the record in support of the nonmoving party's case. *Gallo v. Prudential Residential Servs., Ltd.,* 22 F.3d 1219, 1223–24 (2d Cir.1994). Summary judgment is therefore appropriate if no rational jury could find in favor of the nonmoving party because the evidence in support of its case is so slight, such that there is no genuine issue of material fact. *Id.*

While the Second Circuit has approved the use of summary judgment in discrimination cases, *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985), it has also noted that courts should cautiously grant summary judgment in favor of employers when intent is an issue. *Gallo,* 22 F.3d at 1224. The Second Circuit has since reaffirmed its limited approach to summary judgment in discrimination cases. *See McLee v. Chrysler Corp.,* 109 F.3d 130 (2d Cir.1997). Summary judgment, however, remains appropriate where there are no genuine issues of material fact. *Id.* at 135.

### 1. Title VII of the Civil Rights Act

In her claims under federal antidiscrimination law, plaintiff asserts that defendant discriminated against her based on her religion, race, marital status, and gender[1] in

---

1. Defendant argues that this Court does not have jurisdiction to consider plaintiff's gender discrimination claims under federal or state antidiscrimination law because plaintiff did not raise

these issues in either her CCHRO or EEOC complaints. While this may be true, defendant has not provided any evidence of plaintiff's failure to exhaust her administrative remedies on these

connection with her allegedly wrongful termination and her failure to be promoted within the hospital. We address each of defendant's employment decisions in turn.

### a. Wrongful Termination

Plaintiff claims that defendant treated her differently than her co-workers due to her religion, race, marital status, and gender. She further alleges that these factors motivated defendant to single her out for disciplinary action, suspension, and ultimately termination. Plaintiff thus bases her Title VII case on a disparate treatment theory.

■ In a disparate treatment case, there are two methods of allocating the burden of proof under either (1) the mixed-motive model from *Price Waterhouse*[2] or (2) the pretext model from *McDonnell Douglas*[3]*–Burdine.*[4] The *Price Waterhouse* model applies when an employer's decision is motivated by legitimate and illegitimate reasons. If a plaintiff is unable to establish the employer's reasons motivating the employment decision, the *McDonnell Douglas–Burdine* model applies. In this case, the pretext model governs plaintiff's claims of race, gender, and marital status discrimination, and the mixed-motive model applies to plaintiff's claim of religious discrimination.

■ Under the pretext model of *McDonnell Douglas–Burdine,* a *prima facie* case of discriminatory discharge consists of proof that: (1) the plaintiff was a member of a protected class; (2) plaintiff was performing his or her duties satisfactorily; (3) plaintiff was terminated; and (4) the circumstances surrounding the termination give rise to an inference of discrimination on the basis of plaintiff's membership in that class. *McLee,* 109 F.3d at 134. For purposes of summary judgment only, defendant concedes that plaintiff meets her burden on the first three elements, but it disputes the fourth element

because it claims plaintiff has not presented any facts which raise an inference of discrimination. To establish an inference of discrimination, Thomas must present facts that are "sufficient to remove the most likely bona fide reasons for an employment action." *Tyler,* 958 F.2d at 1180.

■ Once a plaintiff establishes a *prima facie* case of discriminatory discharge, the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the plaintiff's termination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Burdine,* 450 U.S. at 254–55. The burden of persuasion, however, remains with the plaintiff. *Burdine,* 450 U.S. at 253. If the defendant offers a legitimate, nondiscriminatory reason for its termination decision, the plaintiff may then prove by a preponderance of the evidence that the proffered reason is pretextual and that the real reason for the termination was, as in this case, race, gender, and marital status discrimination. *Id.* at 255–56; *see Fisher v. Vassar College,* 114 F.3d 1332, 1333 (2d Cir.1997); *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 129 (2d Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997). To prove pretext, a plaintiff must show that the employer was more likely than not motivated by a discriminatory reason or that the employer's reason is unworthy of belief. *Burdine,* 450 U.S. at 256.

■ Plaintiff's initial burden is not onerous because she needs merely to show that her termination was not made for legitimate reasons, thereby raising the inference that she was fired for illegitimate reasons. *Burdine,* 450 U.S. at 253. Assuming plaintiff has established a *prima facie* case, defendant has provided evidence that it terminated her for

claims, such as providing plaintiff's CCHRO or EEOC charges or these agencies' decisions. Accordingly, we are unable to grant defendant's summary judgment motion on plaintiff's gender discrimination causes of action for plaintiff's failure to exhaust her administrative remedies.

**2.** *Price Waterhouse v. Hopkins,* 490 U.S. 228, 246, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

**3.** *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**4.** *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

legitimate, nondiscriminatory reasons—that she repeatedly violated hospital policies on tardiness, absenteeism, and patient care.

Defendant has also provided documentary evidence that it complied with the hospital's progressive disciplinary procedures. Pursuant to St. Francis' Policy 10-24, the progressive disciplinary process provides that an employee will receive a counseling session for the first violation of hospital policy. This session should be followed by a meeting to review the employee's progress and to discuss methods for improvement. The next disciplinary step is a written warning. Further violations involve consulting with the human resources department to discuss the possibility of suspension and then termination.

Thomas received two verbal warnings for taking an unauthorized, excessive lunch break and for preaching to patients. After these incidents, plaintiff was given a six-month review with suggestions for improvement. She next received a written warning for taking long lunches, making excessive phone calls, and preaching to patients. At this time, she was warned that she could be suspended for further violations. After Thomas' next alleged violation, Gallic consulted with the human resources department and then suspended her. Plaintiff's final alleged violation resulted in a meeting with her supervisor and a human resources representative during which she was terminated.

■ This Court finds that plaintiff has not sustained her burden of showing that defendant's proffered reason for her termination was pretextual on her claims of race, gender, and marital status discrimination. She has not offered sufficient evidence that would establish a genuine issue of material fact or that would rebut defendant's nondiscriminatory reasons for her termination. To support her race discrimination claim, plaintiff cites one example of an allegedly racist comment made by Hoffman. Hoffman allegedly questioned how plaintiff, as a black, single mother, could take vacation. Despite plaintiff's statements that Hoffman made "racist remarks" and that she established direct evidence of Hoffman's and Gallic's racial animus towards her in her 9(c) statement, this is the

only direct or indirect evidence put forth by plaintiff. To prevail at this stage, however, plaintiff must provide more than conclusory allegations of discrimination. See Meiri, 759 F.2d at 998 (affirming a district court's grant of summary judgment in an employer's favor because plaintiff could not establish pretext by alleging that the employer conspired to terminate plaintiff, that the employer misconceived plaintiff's work habits due to the employer's religious discrimination, and that plaintiff heard others make disparaging remarks about plaintiff's religion). Accordingly, we find that this one comment alone is not enough to satisfy plaintiff's burden of proving that defendant's reasons for terminating her were pretextual. Moreover, plaintiff had been employed by defendant for approximately sixteen years without prior instances of racial discrimination. Consequently, we grant defendant's summary judgment motion on plaintiff's claim of racial discrimination for wrongful termination because the evidence in support of plaintiff's case is so slight that plaintiff has failed to raise a genuine issue of material fact. See Gallo, 22 F.3d at 1224.

For similar reasons, plaintiff cannot sustain her burden of proving that defendant used her marital status or gender as a pretext in its decision to terminate her. In addition to Hoffman's statement about plaintiff's ability to take vacation, plaintiff alleges that on another occasion Hoffman asked how she, as a single mother, could send her child to private school. Hoffman, however, was not the only supervisor involved in the decision to terminate her. The record indicates that a Human Resources representative, Collette Austin–Greene, was present at the October 26 meeting with Thomas. Austin–Greene also signed Thomas' termination report. Plaintiff has not offered any evidence that Austin–Greene directly or indirectly discriminated against her based on her gender or marital status.

With respect to Gallic's gender and marital status animus towards plaintiff, the only evidence provided by plaintiff relates to an incident on February 5, 1993. Plaintiff had asked to take an extended lunch break due to a family emergency involving her son. Plaintiff testified that Gallic would not allow her to

take an extended break because she was a single, black mother, although she also testified that Gallic had not made any direct comment about her being black or single.

Plaintiff cannot prove that genuine issues of material fact exist by relying solely on conclusory allegations that defendant terminated her due to gender or marital status discrimination. *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997). Thus, we grant defendant's summary judgment motion on these claims.

■ On plaintiff's claim of religious discrimination for her allegedly wrongful termination, the mixed-motive model applies. According to the Supreme Court in *Price Waterhouse,* a plaintiff must show that he or she was a member of a protected class and that the employer's decision was motivated by one or more prohibited statutory factors, including, as in this case, religion. 490 U.S. at 244. A plaintiff may satisfy the burden of proof either through direct or circumstantial evidence. *Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1187 (2d Cir.), *cert. denied,* 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Specifically, a plaintiff "must present evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude." *Ostrowski v. Atlantic Mut. Ins. Cos.,* 968 F.2d 171, 182 (2d Cir.1992). This quantity of evidence must be sufficient "to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision." *Id.*

■ This Court finds that plaintiff has established that sufficient issues of material fact exist so as to defeat defendant's summary judgment motion on her claim of religious discrimination for wrongful termination. On the day of her termination, October 26, 1993, plaintiff's employment record indicates that she was fired directly as a result of her religion. The record states that defendant "realize[s] [plaintiff] has her beliefs, but that while at work she needs to conform to hospital policy." Plaintiff also received a written warning on May 12, 1993, partially due to her co-workers' complaints, that she preached to patients by telling them that "Jesus saves" and that they need to "repent their sins." On June 22, 1993, plaintiff's employment record recounts an incident in which a patient—Maciaga, who is also a St. Francis registered nurse—complained about plaintiff's preaching. As a result of this incident, plaintiff was suspended for one day without pay.

Plaintiff argues that defendant concocted these incidents in order to terminate her. To support this claim, she notes inconsistencies between deposition testimony and her employment record. For example, Thomas' employment record dated June 22, 1993 states that a patient, Maciaga, complained that plaintiff was dressed inappropriately. She also supposedly complained that plaintiff concluded the mammogram by saying "judgment day is near." During her deposition, however, Maciaga specifically denied complaining about the appropriateness of plaintiff's dress. She also testified that plaintiff never used the phrase "judgment day is near," even though plaintiff made other religious comments. This inconsistency raises a genuine issue of material fact as to whether defendant's decision to terminate her was motivated by its discriminatory attitude towards plaintiff's religion. Although defendant argues that its decision to discipline plaintiff was valid because her religious speech annoyed and disturbed patients, this is another issue for a factfinder to decide. Accordingly, this Court denies defendant's summary judgment motion on plaintiff's claim of religious discrimination for her allegedly wrongful termination.

### b. Failure to Promote

Plaintiff alleges that defendant violated Title VII by failing to promote her due to religious, racial, sex, and marital status discrimination. Plaintiff testified that she applied for two positions within the hospital—one in Special Procedures involving fluoroscopy of the arteries and veins and one in the CAT scan department.

■ To prove a *prima facie* case of failure to promote for discriminatory reasons, a plaintiff must show: (1) that he or she be-

longs to a protected class; (2) that he or she was qualified for the position being sought; (3) that he or she was denied the promotion; and (4) that the circumstances surrounding the failure to promote give rise to an inference of discrimination. *See Burdine,* 450 U.S. at 253–55, 101 S.Ct. at 1094.

■ Even though plaintiff's initial burden is *de minimis,* we find that plaintiff has not provided sufficient evidence to establish that the circumstances surrounding her rejection for the two positions give rise to an inference of discrimination. *See Gomez v.. Pellicone,* Civ. No. 96–6778, 1997 WL 728893, at *7 (S.D.N.Y. Nov.20, 1997) (granting summary judgment in an employer's favor because plaintiff could not establish a *prima facie* case of a discriminatory failure to promote). First, plaintiff offers no proof to support her claim of religious discrimination, other than to suggest that her chances of advancement were negatively impacted by her employment record, which contained incidents of preaching to patients. Second, plaintiff does not offer any proof of discrimination due to her status as a single mother. Third, plaintiff's sex discrimination claim fails because plaintiff testified that the Special Procedures position was given to a woman. To establish an inference of discrimination, the position applied for must have been given to a person outside of plaintiff's protected class. *See de la Cruz v. New York City Human Resources Admin. Dep't of Soc. Servs.,* 82 F.3d 16, 20 (2d Cir.1996).

Finally, on her racial discrimination claim, plaintiff asserts that all of her supervisors were white and it was difficult for minorities to get promoted at St. Francis. Plaintiff does not, however, offer any evidence of the race of the man and woman hired for the CAT scan technician and Special Procedures positions, respectively. As proof of defendant's racial animus, plaintiff testified that Hoffman made discriminatory remarks to her. She mentioned two incidents where he allegedly asked how she could afford to take vacation and send her child to private school when she was a black, single mother. There is no connection, however, between Hoffman's comments and her failure to be promoted because plaintiff has offered no proof

that Hoffman was involved in the decision-making process for promotions. *See Ostrowski,* 968 F.2d at 182. Additionally, plaintiff testified that the two people hired for the Special Procedures and CAT scan technician positions had expertise in those areas, which experience plaintiff did not have.

To defeat defendant's summary judgment motion on her failure to promote claim, plaintiff must offer evidence that would establish the existence of a triable issue of fact. Plaintiff cannot meet her burden based on conjecture, surmise, or reliance on unsupported assertions. *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995). We find that the minimal evidence plaintiff has provided on her failure to promote claim does not constitute sufficient evidence from which a trier of fact could draw an inference of discrimination based on race, religion, sex, or marital status. Consequently, we grant defendant's summary judgment motion on plaintiff's claim of a discriminatory failure to promote.

### 2. Connecticut Antidiscrimination Laws

■ Plaintiff claims that defendant violated two sections of Connecticut's antidiscrimination laws, Conn.Gen.Stat. §§ 46a–58(a) and 46a–60(a)(1). In *Commission on Human Rights and Opportunities v. Truelove and Maclean, Inc.,* 238 Conn. 337, 346, 680 A.2d 1261, 1267 (1996), the Connecticut Supreme Court held that section 46a–58(a) does not apply to claims of discriminatory employment practices that fall within the scope of section 46a–60. Here, plaintiff alleges only that defendant discriminated against her in the employment context by wrongfully terminating her and preventing her advancement within the hospital. Consequently, plaintiff may not seek relief under the more general cause of action in section 46a–58(a) because this claim is superseded by her more specific, narrowly tailored cause of action under section 46a–60(a). *Id.* at 346, 680 A.2d at 1267. Defendant is therefore entitled to summary judgment as a matter of law on the count of plaintiff's amended complaint alleging violation of section 46a–58(a) because plaintiff has failed to state a cause of action.

Plaintiff also alleges that defendant violated section 46a–60(a)(1) by conspiring to fabricate patient complaints which led to disciplinary action, suspension, and termination, and by seeking to prevent her advancement at St. Francis without any bona fide occupational qualification or need. Section 46a–60(a)(1) prohibits an employer, by himself or his agent, from terminating an employee or from discriminating against an employee in the terms, conditions, or privileges of employment because of the employee's race, religion, sex, or marital status. Conn.Gen.Stat. § 46a–60(a)(1) (1995). To determine liability under section 46a–60(a)(1), Connecticut courts follow the analysis of federal courts interpreting Title VII claims, especially where, as here, the federal and state provisions are similar. *See Levy v. Commission on Human Rights and Opportunities*, 236 Conn. 96, 103, 671 A.2d 349, 355 (1996). Accordingly, for the reasons set forth in section 1, this Court grants defendant's summary judgment motion on plaintiff's claims of race, gender, and marital status discrimination in connection with her allegedly wrongful termination and on all discrimination claims relating to her failure to be promoted. We deny defendant's summary judgment motion on plaintiff's religious discrimination claim for her allegedly wrongful termination.

### 3. *Wrongful Termination*

In the amended complaint's preliminary statement, plaintiff asserts that she was wrongfully discharged from her job of sixteen years. The plaintiff does not, however, specifically allege that she was wrongfully terminated in violation of public policy, nor does she set forth any facts to support this claim. Defendant, in turn, did not brief this issue in its summary judgment motion.

■■■ As a prerequisite to maintaining a wrongful discharge claim, plaintiff must allege violation of an important public policy. *Morris v. Hartford Courant Co.*, 200 Conn. 676, 680, 513 A.2d 66, 68 (1986). Additionally, plaintiff must show that she would other-

wise be without a remedy before pursuing a wrongful discharge claim. *See Friel v. St. Francis Hosp.*, Civ. No. 3:97–803, 1997 WL 694729, at *2 (D.Conn. Oct.31, 1997); *Atkins v. Bridgeport Hydraulic Co.*, 5 Conn.App. 643, 648, 501 A.2d 1223, 1226 (1985). As an initial matter, plaintiff has not specifically asserted that defendant violated an important public policy. More fatal to her claim, however, is the availability of redress for defendant's alleged discriminatory conduct under federal and state antidiscrimination laws. *See, e.g., Brosler v. Food Automation–Serv. Techniques, Inc.*, Civ. No. 3:96–2345, 1997 WL 711438 (D.Conn. Aug.25, 1997) (dismissing plaintiff's wrongful discharge claim because relief was available under federal and state civil rights statutes). To the extent that plaintiff raises a wrongful discharge claim, this cause of action is dismissed.[5]

### 4. *Intentional Infliction of Emotional Distress*

In support of her claim for intentional infliction of emotional distress, plaintiff asserts that defendant's treatment of her was intentional and was done with the purpose of causing her severe and grievous mental and emotional harm. She further contends that defendant's actions were willful and outrageous and that she suffered severe physical and emotional consequences.

■■■ Under Connecticut law, to prove intentional infliction of emotional distress, plaintiff must show that: (1) defendant intended or knew that emotional distress was a likely result of its conduct; (2) defendant's conduct was extreme and outrageous; (3) defendant's conduct caused her emotional distress; and (4) her distress was severe. *Vorvis v. Southern New England Telephone Co.*, 821 F.Supp. 851, 855 (D.Conn.1993) (citing *Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337, 1342 (1986)).

■■■ It is a question for the court to determine whether defendant's behavior was

---

5. This Court notes that, to the extent plaintiff has asserted a wrongful termination claim, plaintiff has violated the pleading requirements of setting forth each cause of action in a separate numbered paragraph. Fed.R.Civ.P. 10(b). Thus, it is difficult to determine whether plaintiff is actually alleging a wrongful discharge claim because she raises this claim *only* in the amended complaint's introductory paragraph in which she sets forth all of her state and federal claims.

of such a nature and quality to constitute extreme and outrageous conduct. *See Johnson v. Chesebrough–Pond's USA Co.*, 918 F.Supp. 543, 552 (D.Conn.1996); *Mellaly v. Eastman Kodak Co.*, 42 Conn.Supp. 17, 18, 597 A.2d 846, 847 (1991). Connecticut courts have relied on the Restatement (Second) of Torts for the meaning of "extreme and outrageous conduct." *See Scandura v. Friendly Ice Cream Corp.*, No. 930529109S, 1996 WL 409337, at *2–3 (Conn.Super. June 26, 1996); *Mellaly*, 42 Conn.Supp. at 19–20, 597 A.2d at 847. The relevant section provides: "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) Torts § 46, cmt. d (1965).

Plaintiff has not specified how defendant acted extremely or outrageously. In the amended complaint, she makes a conclusory statement that defendant's actions "were willful and outrageous." In other pleadings, she alleges that defendant's conduct "was extreme and outrageous" without explanation. Plaintiff argues that defendant relied on alleged violations of hospital policy as a pretext for discriminating against her based on her race, religion, marital status, and gender. She also claims that defendant's discrimination led to her receiving verbal and written warnings, her suspension, and finally her termination.

After reviewing the pleadings, supporting exhibits and affidavits, including deposition testimony, this Court finds as a matter of law that defendant's alleged behavior does not constitute extreme and outrageous conduct. At most, the evidence establishes that plaintiff was an at-will employee who was terminated because her supervisors believed her performance violated hospital policies relating to patient care. Plaintiff cites two instances in which her supervisor, Hoffman, allegedly commented to her "How could you, a black, single mother go away on vacation," and "How could you, a single mother afford to send your children to private school." Conduct that is merely insulting, that reflects bad taste or judgment, or that

results in hurt feelings is not enough to maintain a cause of action for intentional infliction of emotional distress. *Scandura*, 1996 WL 409337, at *2; *Mellaly*, 42 Conn. Supp. at 19, 597 A.2d at 847. Although defendant may not have applied the hospital's progressive discipline policies in an ideal manner, its behavior does not rise to the level of extreme and outrageous conduct. We therefore grant defendant's summary judgment motion on plaintiff's claim for intentional infliction of emotional distress.

### 5. Negligent Infliction of Emotional Distress

Plaintiff's next cause of action alleges that defendant negligently inflicted emotional distress. Under Connecticut law, plaintiff must prove that defendant knew or should have known that its conduct "involved an unreasonable risk of causing emotional distress" and that the distress, "if it was caused, might result in illness or bodily harm." *Montinieri v. Southern New England Telephone Co.*, 175 Conn. 337, 345, 398 A.2d 1180, 1184 (1978); *see Barrett v. Danbury Hosp.*, 232 Conn. 242, 260–61, 654 A.2d 748, 757 (1995); *Buckman v. People Express, Inc.*, 205 Conn. 166, 173, 530 A.2d 596, 600 (1987).

While plaintiff claims that she lost the esteem of her peers, she suffered physical injuries, including insomnia, stomach disorders, anxiety, and headaches, and she lost substantial income, this is not the standard for determining if plaintiff has established a *prima facie* case for negligent infliction of emotional distress. *See* Plaintiff's Reply Brief, at 14 (citing *Miner v. City of Glens Falls*, 999 F.2d 655, 663 (2d Cir.1993) (discussing an award of damages for emotional distress under section 1983)).

In the employment context, negligent infliction of emotional distress arises only if it is " 'based upon unreasonable conduct of the defendant in the termination process.' " *Parsons v. United Technologies Corp., Sikorsky Aircraft Div.*, 243 Conn. 66, 88, 700 A.2d 655, 667 (1997) (quoting *Morris*, 200 Conn. at 682, 513 A.2d at 69); *see Hill v. Pinkerton Sec. & Investigation Servs., Inc.*, 977 F.Supp. 148, 159 (D.Conn.1997) (granting

defendant's summary judgment motion because, although plaintiff may not have been satisfied with defendant's manner in handling the investigation of her compensation complaint, the record did not indicate that defendant acted so negligently as to sustain an action for negligent infliction of emotional distress). A plaintiff cannot rely on the allegedly wrongful termination alone. *Parsons*, 243 Conn. at 88–89, 700 A.2d at 667. Instead, Thomas must allege additional unreasonable conduct on defendant's part that occurred with respect to her termination. *Hill*, 977 F.Supp. at 159; *see Parsons*, 243 Conn. at 88, 700 A.2d at 667.

 While plaintiff has alleged that she suffered mental anguish and humiliation due to the disciplinary actions and her termination, she has not set forth sufficient facts to establish that defendant created an unreasonable risk of causing emotional distress. Plaintiff cites the two comments made by Hoffman relating to her race, marital status, and gender. Although these comments may have been inappropriate and made with bad intent, these facts alone will not support a cause of action for negligent infliction of emotional distress. Moreover, plaintiff has not produced any evidence, beyond the allegedly wrongful termination, that defendant acted unreasonably on the day of her termination. We therefore grant defendant's motion to dismiss on plaintiff's claim for negligent infliction of emotional distress.

### 6. Defamation

 Plaintiff claims that defendant's actions defamed her reputation as a radiology technician. Under Connecticut law, to state a cause of action for defamation, a plaintiff must allege that, without privilege, the defendant published false statements that harmed the plaintiff. *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 27, 662 A.2d 89, 102 (1995) (quoting *Kelley v. Bonney*, 221 Conn. 549, 563, 606 A.2d 693, 701 (1992)).

Plaintiff does not identify any specific false statements in support of her defamation claim. While the Second Circuit does not require a plaintiff to plead the exact alleged defamatory words, *Kelly v. Schmidberger*,

806 F.2d 44, 46 (2d Cir.1986), the Federal Rules of Civil Procedure require that a complaint must provide sufficient information to enable a defendant to respond. Fed .R.Civ.P. 8; *see Kelly*, 806 F.2d at 46. In *Wanamaker v. Columbian Rope Co.*, 713 F.Supp. 533, 545 (N.D.N.Y.1989), *aff'd*, 108 F.3d 462 (2d Cir.1997), the court dismissed the defamation count because the pleadings lacked the requisite specificity by failing to state the speaker of the statements, the context in which the statements were made, when the statements were made, whether the statements were written or verbal, and whether the statements were communicated to a third party. *Id.* The court further stated that the pleadings did not set forth "in any manner whatsoever" the alleged defamatory statements. *Id.*

 Plaintiff's pleadings are remarkably similar to the complaint in *Wanamaker*. The sole statement in the amended complaint supporting plaintiff's defamation claim is that defendant's actions defamed her reputation as a radiology technician. In her brief opposing defendant's summary judgment motion, plaintiff makes a conclusory statement that the evidence supports her defamation claim. She also contends that her "discharge by its very nature was published" because she was at work one day and not the next so her co-workers and friends "must have learned of her discharge." She never describes, even generally, any allegedly false statements made by defendant in connection with the discharge. Thus, she never gave defendant notice of the subject matter to which it could potentially assert a defense, including the defense of qualified privilege. Accordingly, this Court finds that plaintiff has failed to state a cause of action for defamation. *See Croslan v. Housing Auth. of New Britain*, 974 F.Supp. 161, 169–70 (D.Conn.1997) (granting defendant's summary judgment motion on a defamation count because the complaint failed to state the claim with sufficient specificity where the plaintiff failed to provide the detail necessary to determine which statements were allegedly defamatory, and where the complaint did not state who heard the statements, when the statements were made, and the context in

which the statements were made, even though the complaint generally identified the subject matter of the statements). We therefore grant defendant's summary judgment motion on plaintiff's defamation cause of action.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED in part and DENIED in part.

**SO ORDERED.**