**Ori O. KELLMAN, Plaintiff,**

v.

**YALE–NEW HAVEN HOSPITAL, Defendant.**

**No. 3:98CV1101 (WWE).**

United States District Court, D. Connecticut.

May 19, 2000.

---

Laura Lee A. Dorflinger, Amy E. Johnson, Law Office of Martyn Philpot, New Haven, CT, for plaintiff.

Margaret P. Mason, Robert C. Hinton, Tyler, Cooper & Alcorn, New Haven, CT, for defendant.

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiff Ori Kellman brings this action against defendant Yale–New Haven Hospital alleging that the defendant unlawfully discriminated against him on the basis of his race by terminating his employment, and then failing to rehire him, after he was involved in an on-the-job argument with a fellow employee who is the mother of his son.

On August 11, 1999, the Court granted Yale–New Haven Hospital's Motion to Dismiss the plaintiff's Second Amended Complaint on all but one claim. Remaining before the Court is the plaintiff's sole count of discrimination in violation of Title 42 U.S.C. sec.1981.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant Yale–New Haven Hospital now moves this Court for summary judgment. For the following reasons, the defendant's motion [Doc. # 42] will be granted.

**1.** Defendant claims that Sheila Irving is biracial. For purposes of this ruling the court assumes that she is White/ Caucasian.

### FACTS

Defendant Yale–New Haven Hospital ("Hospital") is a nonprofit teaching hospital located in New Haven, Connecticut. Plaintiff Ori Kellman was an employee of the defendant. He was hired by the Hospital in August, 1994, as a Food Service Associate, and later changed positions and became a Short Order Cook. He is an African–American male whose color is black.

Sheila Irving has been an employee of the Hospital at all relevant times. According to the plaintiff, Sheila Irving looks and identifies with being White/Caucasian.[1] She is also the mother of the plaintiff's son.

Barbara Davis is the plaintiff's supervisor. She is an African–American woman.

During the relevant times of the complaint, the Plaintiff and Ms. Irving were in the midst of an on-going dispute concerning the plaintiff's visitation rights of their son. For about three or four weeks prior to February 5, 1997, the plaintiff asserts that Ms. Irving did not permit him to see his son unless the meeting took place in a car outside Ms. Irving's home.

### THE FEBRUARY 5th DISTURBANCE

On February 5, 1997, the plaintiff and Ms. Davis were working in the Hospital's New Haven Cafeteria and Ms. Irving was working in the Hospital's main kitchen which is located across the street from the Hospital's New Haven cafeteria.[2] Ms. Davis instructed the plaintiff to clean the deep frying machine, commonly referred to as a fry-olator, which had recently been returned from the Hospital's engineering section after repairs. The usual procedure for cleaning the fry-olator involved emptying grease normally in the fry-olator into cleaning pots which occasionally needed to be retrieved from the main kitchen. On

**2.** There is a tunnel that connects the building where the Main Kitchen is located and elevators which are used to access the Cafeteria.

February 5, the plaintiff left his work area to retrieve the cleaning pots from the main kitchen to clean the Fry-olator which was located in the cafeteria. Plaintiff avers that he attempted to ask his supervisor for permission to leave his work area to retrieve the cleaning pots but was unable to speak with Ms. Davis because she was on the telephone.

After the plaintiff got the pots, he saw Ms. Irving in another part of the main kitchen. Her back was turned to him. The plaintiff initiated contact by remarking, "Yo, what's the problem" and "Why can't I see my son?" After the plaintiff initiated contact with Ms. Irving an argument ensued.

During the course of the argument, both parties were shouting and trading obscenities. The argument which began in the kitchen moved its way into the hallway, and eventually into the elevator where Sheila Irving became physical and began hitting the plaintiff with a kitchen utensil. Plaintiff avers that the argument created a disturbance which was witnessed by many co-workers.

During the course of the argument a supervisor told both the plaintiff and Ms. Irving to stop arguing and return to work. However, while the plaintiff claims that he began to return to the cafeteria, both individuals continued to trade insults and obscenities.

Within a short period of time after the argument, both the plaintiff and Ms. Irving were placed on suspension. On February 12, 1997, the plaintiff was brought into a meeting at the Hospital and subsequently terminated from his employment. The Hospital also terminated Ms. Irving's employment on February 12, 1997.

### Code of Conduct

The Hospital's Basic code of Employee Conduct provides in relevant part that:

Employees must refrain from using abusive, provocative or profane language, and must avoid creating or being party to a disturbance or physical violence....

Employees must observe the principles of mutual respect in their contacts with patients and visitors and in their working relationship with their supervisor and co-workers....

Employees must obtain permission from their supervisors when it becomes necessary to leave their work area during working hours....

The Hospital's Serious Violations of the Basic Code of Conduct include the following violations that may warrant termination from employment:

fighting, threatening, physical harm, creating a disturbance, or other acts that constitute disorderly conduct....

Refusal to follow the instruction of authorized personnel....

Any other acknowledged serious violation of departmental and/or hospital policies, or any serious incident of misconduct or behavior which, after review of the circumstances, warrants termination from employment....

### Union's Grievance

On February 8, 1997, the New England Health Care Employees Union, District 1199 AFL—CIO ("Union"), grieved the suspension/termination of the plaintiff. On February 18, 1997, the Union grieved the suspension/termination of Ms. Irving.

On February 18, 1997, the Hospital denied the Union's grievance of the plaintiff and issued the following response:

Mr. Kellman was discharged on February 12, 1997 for use of profane language, creating a disturbance in the workplace and leaving his assignment without permission. A review of the entire incident, including witness testimony, confirms that Mr. Kellman left his work area while on an overtime assignment despite his supervisor's directive to remain. He then sought out Ms. Irving and publicly ridiculed her using profanity and berating her in front of her co-workers.

In the grievance meeting, Mr. Kellman was unable to provide any work-related explanation for his action or presence in Ms. Irving's work area. I thus conclude it was Mr. Kellman's provocative actions which resulted in an altercation with Ms. Irving and created a major disturbance in the workplace.

Finally, Mr. Kellman fails to recognize any responsibility for this and stated in the grievance that he did not "feel [I] did anything wrong."

I find no mitigating circumstances or contractual violation in the discharge of Ori Kellman. This grievance is denied at step 3.

The Hospital granted the Union's grievance on behalf of Ms. Irving and issued the following response:

The following serves as Yale–New Haven Hospital's response to the grievance filed on behalf of Sheila Irving which was discussed on March 25, 1997. In their appeal, the Union contends that Ms. Irving's termination on February 12, 1997 was unreasonably harsh in that Ms. Irving had been provoked by Mr. Ori Kellman and was left with no alternative other than to defend her personal dignity. According to Ms. Irving and the reports of witnesses, Mr. Kellman had planned, with prior intent, to confront Ms. Irving regarding visitation of their child. He went outside his work area without permission, sought out Ms. Irving in her work area in the main kitchen, and began to berate her using insulting and profane language in front of her co-workers. Although Ms. Irving's response was clearly wrong, she recognized the inappropriateness of her behavior. In our discussion, Ms. Irving expressed remorse for her actions and apologized for her conduct. Given these highly unusual circumstances, I shall grant this grievance with the following provisions:

1. Ms. Irving will be returned to work on or after May 21, 1997 upon completion of the Domestic Violence Program in which she is currently enrolled.

2. Termination of 2/12/97 will be reduced to a Final Written Warning.

3. The period from February 12, 1997 to return to work will be considered unpaid suspension.

The parties understand that any future incident of similar workplace misconduct will result in Ms. Irving's termination.

## DISCUSSION

Summary judgment pursuant to Fed. R.Civ.P. 56(c) is appropriate if the court finds, after viewing the facts in the light most favorable to the nonmoving party, that there is no genuine issue of material fact pertaining to a given issue and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The burden is on the moving party to show that no material facts are in dispute. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). A dispute over a material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). The court's role in considering summary judgment is not to resolve disputed issues, but only to determine the existence of factual issues to be tried. *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986).

In the context of a motion for summary judgment, disputed issues of fact are not material if the moving party would be entitled to judgment as a matter of law, even if the disputed issues were resolved in favor of the nonmoving party. Such factual disputes, however genuine, are not material, and their presence will not preclude summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

In order to sustain a claim under section 1981, a plaintiff must prove that: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; (3) the discrimination concerned one or more of the activities enumerated in the statute. *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2nd Cir.1993). A claim brought pursuant to Title 42 U.S.C. sec.1981 is resolved under the framework of Title VII. *Taitt v. Chemical Bank,* 849 F.2d 775 (2d Cir.1988).

Plaintiff bears the initial burden of proving, by a preponderance of the evidence, a *prima facie* claim of racial discrimination in the enforcement of employee disciplinary measures under Title VII. *McDonnell Douglass Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff must show: (1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable to serious misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those others employees. *Moore v. City of Charlotte, NC,* 754 F.2d 1100, 1105–06 (4th Cir.1985). Although the plaintiff's initial burden is not onerous, he must show that his termination was not made for legitimate reasons. *Thomas v. St. Francis Hospital and Medical Center,* 990 F.Supp. 81, 86 (D.Conn.1998).

If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action. The plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). An employer's reason for termination cannot be proved to be a pretext for discrimination unless it is shown to be false and that discrimination was the real reason. *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995).

## DEFENDANT'S DECISION TO FIRE THE PLAINTIFF[3]

Defendant argues that reasonable people could not differ that the prohibited conduct in which the plaintiff engaged was comparable to serious misconduct of employees outside the protected class, and that the disciplinary measure enforced against him was not more severe than that enforced against another employee.

The undisputed evidence demonstrates that both the plaintiff and Ms. Irving violated the Hospital's Serious Violations of the Basic Code of Employee Conduct by creating a disturbance in the workplace and by repeatedly using profanity toward each other. It is undisputed that they created such a spectacle that some of the many co-workers who witnessed the incident commented that if they did not stop, they might lose their jobs. It is also undisputed that a supervisor told both of them to stop arguing and to return to work, but both continued to argue and trade insults. Therefore, both Ms. Irving and the plaintiff engaged in the same conduct that violated the Hospital's Serious Rules of Conduct that warranted their termination.

There can be no inference of unlawful racial discrimination in this case on the basis that the disciplinary action against the plaintiff was more severe than the disciplinary action taken against Ms. Irving because the disciplinary action taken by the Hospital against both the plaintiff and Ms. Irving was identical. Both were fired on February 12, 1997. *See Nweke v. Prudential Ins. Co. of America,* 25 F.Supp.2d 203, 225 (S.D.N.Y.1998) (granting summary judgment where there is no evidence that the plaintiff was treated less

---

**3.** It is undisputed that the plaintiff is a member of a protected class.

favorably than similarly situated employees).

## DEFENDANT'S DECISION NOT TO REHIRE THE PLAINTIFF

 Defendant also argues that the plaintiff is unable to establish a *prima facie* case of discriminatory discharge under Section 1981 on the basis that the Hospital denied the Union's grievance filed on the plaintiff's behalf while granting it on behalf of Sheila Irving because there is no evidence that race was a pretext for the decision not to rehire the plaintiff. This Court agrees.

Plaintiff has failed to offer any evidence that suggests that the decision to terminate or deny the plaintiff's grievance was motivated by race. *See Vandel v. Standard Motor Products, Inc.,* 52 F.Supp.2d 344, 348 (D.Conn.1999) (granting summary judgment where plaintiff offered no evidence that his termination occurred under circumstances giving rise to an inference of discrimination). The Hospital has given clear non-discriminatory reasons as to why it fired and did not subsequently rehire the plaintiff, and the plaintiff has not offered evidence to rebut such reasons. *See Proctor v. MCI Communications Corp.,* 19 F.Supp.2d 11, 15–21 (D.Conn.1998) (Plaintiff's burden to prove employer's stated reasons for termination were pretext for racial discrimination). *See also Rodriguez v. Gary Plastic Packaging Corp.,* 1997 WL 16665 at *6 (S.D.N.Y.1997) (Plaintiff bears the burden of establishing that the employer imposed arbitrary or unreasonable demands as cover for discrimination.) Accordingly, because the plaintiff has not met his burden of alleging factual evidence to create a genuine issue of material fact over which reasonable people could disagree, summary judgment must be granted.

## CONCLUSION

For the reasons stated above, the defendant's Motion for Summary Judgment [Doc. # 42] is GRANTED.

The clerk is instructed to enter judgment in favor of the defendant, terminate all pending motions, and close this case.